UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

DAVID BRUMSFIELD,
   Plaintiff,

vs.                                        No. 04-1165

D. DINTELMAN, et.al.,
   Defendants

ORDER

      This cause is before the court for consideration of the defendant's motion for summary judgement. [d/e 24]

BACKGROUND

      On June 15, 2004, the court conducted a merit review of the pro se plaintiff's complaint and found that the plaintiff had adequately alleged a claim under the Federal Tort Claims Act. The plaintiff claimed that a nurse at a federal correctional facility gave him the wrong injection which lead to on going health problems. The following facts are taken from the motion for summary judgement and the plaintiff's response.

      All inmates within the Federal Bureau of Prisons are required to be screened for tuberculosis within two days of their initial incarceration. Inmates must then be re-screened on an annual basis. The test is routinely administered by injecting 0.1 cc of tuberculin serum into the arm of the inmate.

      The plaintiff was an inmate at the Federal Correctional Institute in Pekin, Illinois and was scheduled for a tuberculosis test on June 6, 2003. Nurse David Dintelman was responsible for administering the test to the plaintiff and several other inmates on that day. Nurse Dintelman says he retrieved bottles of what he thought was the correct serum for the medical tests and used these syringes for the tuberculous tests performed on June 6, 2003. Each inmate was then told to return to the health department on June 9, 2002, so the test could be read.

      On Monday, June 9, 2003, a number of the inmates showed positive for tuberculosis. A positive reaction is a red, swollen circle at the cite of the injection. The high number of positive results was unexpected, so a decision was made to re-test the inmates. On June 9, 2003, the plaintiff was one of the inmates who was given another injection of the tuberculin serum.

      It was later discovered that Nurse Dintelman did not inject Brumfield and the other inmates with tuberculosis serum on June 6, 2003. Instead, the inmates received a Tetanus/Diphtheria serum or tetanus vaccine. Both products are made by the same manufacturer and packaged in similar vials and stored in the same area at the prison. However, a check of the manufacturer and lot number recorded at the time of the injection showed the inmates were injected with the Tetanus/Diphtheria serum. The plaintiff states that he was not in fact injected with the tetanus syrum, but with "a

chemical or other substance." (Plain Response, p. 3)   The plaintiff has offered no evidence of this claim.

The defendants say the tetanus vaccine was routinely given to inmates every five to ten years.  While the tuberculosis serum is injected under the skin, the tetanus vaccine is injected into the muscles.  The defendants say that intradermal injunctions (between layers of skin) cause localized skin reactions, while intramuscular injections (within a muscle mass) cause systemic absorption.  The amount give for a typical tetanus vaccination  is 0.5 cc a does, or five times the amount that Nurse Brumfield injected into inmates.  Brumfield had received his tetanus injection in October of 2001 and did not suffer any adverse reactions.

On June 10, 2003, Nurse Dintelman informed the plaintiff and other inmates about the mistake.  Dintelman examined the plaintiff and noticed a minimal amount of redness at the injection site along with some itching.  Only one of the inmates who received the wrong injection suffered from a mild allergic reaction which consisted of some swelling and redness.  This inmate was treated without incident.

The plaintiff has claimed a host of reactions to the June 6, 2003 tetanus injection including headaches, abdominal pain, diarrhea, loss of weight, swollen arms and dizziness.  The plaintiff claims the problems began within 30 minutes of the injection and he still suffers from these symptoms.

The medical records show that the first time the plaintiff was seen in the medical unit for abdominal pain and diarrhea was on June 17, 2003.  This was eleven days after the injection and the plaintiff said he had experienced the symptoms for two days.  The plaintiff was seen again on October 6, 2003 and was in good health.

The defendants have submitted affidavits from two expert witnesses.  The first affidavit is from William Gould, a pharmacist at the Federal Correctional Institute in Pekin.  Gould says he has reviewed the complete medical records of the plaintiff and is familiar with the medications that were provided to the plaintiff. Gould says based on his training, experience and review of the records, "it is my opinion that there is no pharmacological reason to believe that diarrhea, dizziness, upset stomach, malaise or depression were caused by a 0.1 cc intradermal (under skin) injection of Tetanus/Diphtheria." (Def. Memo, p. 171)

The second affidavit is from the Clinical Director at the Federal Correctional Institution in Pekin, Angel Ortiz.  Dr. Ortiz is a licensed physician who has also reviewed the medical record in this case.  Dr. Ortiz states that based on his education, experience and review of the record, it is his opinion that the only injury caused by the June 6, 2003 injection was minimal redness at the injection site and itching "which is a common reaction to any injection." (Def. Memo, p. 174) The doctor further states that it is his opinion that the injuries complained of by the plaintiff were not caused by the injection.

The plaintiff states that neither of the expert witnesses was there when he was injected and

could not know what he was injected with.  The plaintiff also says both witnesses work for the Federal Correctional Institution in Pekin and are therefore biased.

## II. LEGAL STANDARD

The entry of summary judgment is proper only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  A "material fact" is one that "might affect the outcome of the suit." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A dispute is genuine only if a reasonable jury could find for the nonmoving party.  Id.

A party moving for summary judgment initially has the burden of showing the absence of any genuine dispute of material fact based on the evidence. Adickes v. S.H. Kress & Co., 398 U.S. 144, 153 (1970);  Schroeder v. Barth, Inc., 969 F.2d 421, 423 (7th Cir. 1992).  A nonmoving party cannot rest on its pleadings, but must demonstrate that there is admissible evidence that will support its position.  Tolle v. Carroll Touch, Inc., 23 F.3d 174, 178 (7th Cir. 1994).  The evidence and all reasonable inferences drawn therefrom are viewed in the light most favorable to the non-moving party. Anderson, 477 U.S. at 255.  Nonetheless, "(s)ummary judgement is not a discretionary remedy.  If the plaintiff lacks enough evidence, summary judgement must be granted." Jones v. Johnson, 26 F.3d 727, 728 (7th Cir. 1994).

## III. ANALYSIS

The defendants argue that the plaintiff cannot show that his claimed injuries were the result of the injection he received on June 6, 2003.  The plaintiff has filed his lawsuit pursuant to the Federal Tort Claims Act which allows suits against the United States by those who were injured by the negligent acts or omissions of any government employee acting within the scope of their duties. 28 U.S.C.§1346(b).  The substantive law of the state where the alleged injury occurred governs actions under the Federal Tort Claims Act. Midwest Knitting Mills, Inc. v United States, 950 F.2d 1295, 1297 (7th Cir. 1991); L.M. ex rel. K.M. v United States, 344 F.3d 695, 698 (7th Cir. 2003)

Therefore, the plaintiff must demonstrate under Illinois negligence law that: (1) the defendant owed the plaintiff a duty; (2) the defendant breached that duty; and (3) that breach was the proximate cause of the plaintiff's injury. Chandler v. Illinois Central R.R. Co, 207 Ill.2d 331, 340 (2003).  The defendants argue that the plaintiff cannot demonstrate the third element of his case.  The court agrees.

The plaintiff has not presented any evidence to support his claim that he was injected with something other than a tetanus vaccine.  The defendants have relied upon the medical notations of the lot number and manufacturer to identify the substance injected on June 6, 2003.  The plaintiff claims a host of symptoms that have lasted for years, but provides no medical evidence in his response to support that he suffered from these symptoms at any time except for June 17, 2003.  The plaintiff also presents no evidence that an intradermal injunction of 0.1 cc of the tetanus vaccine could cause

any of the symptoms alleged by the plaintiff.  The defendant's motion for summary judgement is granted.  [d/e 24]

    IT IS THEREFORE ORDERED that:

    1) The defendant's motion for summary judgement is granted  pursuant to Fed. R. Civ. P. 56. [d/e 24]   The Clerk of the Court is directed to enter judgment in favor of the defendant in accordance with this order.  The parties are to bear their own costs.  This case is terminated.

    2) The agency having custody of the Plaintiff is directed to remit the docketing fee of $150.00 from the plaintiff's prison trust fund account if such funds are available.  If the plaintiff does not have $150.00 in his trust fund account, the agency must send 20 percent of the current balance, or the average balance during the past six months, whichever amount is higher; thereafter, the agency shall begin forwarding monthly payments from the plaintiff's trust fund account to the clerk of court each time the plaintiff's account exceeds $10.00 until the statutory fee of $150.00 is paid in its entirety.  The filing fee collected shall not exceed the statutory filing fee of $150.00.

    3) The plaintiff is responsible for ensuring the $150.00 filing fee is paid to the clerk of the court even though his case has been dismissed.  Release from incarceration does not relieve the plaintiff of his obligation to pay the filing fee in full.

    4) The plaintiff must notify the clerk of the court of a change of address and phone number within seven days of such change.

    <u>5 The clerk is directed to mail a copy of this order to the plaintiff*s place of confinement, to the attention of the Trust Fund Office</u>.

ENTERED this 23rd day of February, 2006.

                               **s\Harold A. Baker**

                              _____
                                HAROLD A. BAKER
                        UNITED STATES DISTRICT JUDGE